Judge Green
delivered the opinion of the Court.
The appellee, claiming to be a creditor of Byrd, Chamberlayne, prosecuted in the life-lime of the latter, an action at law against him, which abated by the death of the defendant. The former thereafter prosecuted an action for the same cause, against Edward P. Chamberlayne, the administrator of Byrd Chamberlayne; and, having obtained a verdict, a judgment was rendered by consent of the parties, to be levied of the goods and chattels of the intestate, then in the hands, or which might thereafter come to the hands, of the defendant, to be administered, after satisfying thereout all debts of superior dignity and prior judgments. Upon this judgment, no further proceedings were had; nor was any execution taken out thereupon. The plaintiff then filed his bill against the administrator de bonis non of Byrd Chamberlayne, and the appellants, the children of Byrd Chamberlayne, to whom the latter had, in his life-time, conveyed sundry slaves, by-several deeds; alledging, that those conveyances were voluntary and fraudulent as to the creditors of the donor, and praying that the slaves should be subjected to the payment of his demand. The defendants, claiming under those deeds, insisted upon their validity; that the plaintiff had no just demand upon Byrd Chamberlayne; and that the judgment, at law was obtained by the collusion and fraud of the plaintiff and the administrator. The plaintiff offered no. evidence in support of his demand, other than the record and judgment in the suit at law. That record, in *394 dependent of the verdict and judgment, affords no proof ptr se 0f the justice of the plaintiff’s demand. The Court Chancery declared the deeds to be fraudulent and void, an¿ that the property should be sui’rendered by the defendants, and sold for the satisfaction of the judgment; iron. which decree, the defendants claiming under the deeds ■ y-pealed.
It is settled in England, by a series of uniform decisions, that no person, claiming to be a creditor, can mi-peach, in equity, any conveyance fraudulently made by the debtor of his property, until he has established his demand at law, by obtaining a judgment, and by suing out an execution thereupon, if he seeks satisfaction cut of the personal property of his debtor. The cases upon this point are cited, and commented on, by Chancellor Kent, of New York, in 2 Johns. Ch. Rep. 144; Ibid. 290; 4 do. 671, 682. If it were otherwise, and any creditor might, in the first instance, question the disposition of his debtor’s property in a Court of Equity, it would produce the greatest inconvenience. The debtor, and a donee claiming under him, would be obliged to litigate, at the same time, the questions, whether the debt claimed was due or not, and whether the conveyance was valid or not; and, after an expensive and harrassing litigation, it might be ascertained that no debt was due. Without a contract for a specific lien, (unless in cases where a legal lien exists,) a - creditor can only assert his claim against the person of the debtor, and cannot claim satisfaction out of any specific property belonging to the debtor, until his property be specifically bound to the satisfaction of the debt, by con- - tract or by judgment, as to lands, or judgment and execution delivered to the Sheriff, as to personal estate. The debtor has an unquestionable right to alienate his property bona fide, or to prefer one creditor to another. If the creditor had the right to claim satisfaction out of his debt- or’s property fraudulently alienated, in a Court of Equity, in the first instance; to give any effect to such proceeding, *395 the creditor must be considered as acquiring, by the exhibition of the bill, a specific right to be satisfied out of that property; and, if so, a subsequent sale of the property hona fide made by the debtor, which, in general, would be valid, could have no effect; and even a subsequent judgmerit creditor could not levy an execution upon the property in question. And, if several creditors pursued their remedies at the same time, in equity, there would be no rule recognized by law, by which to ascertain ilieir priorities. Many other extremely inconvenient consequences would arise, from permitting such a proceeding, which need not now be insisted on. Besides, a voluntary and fraudulent conveyance is good between the parties, and those claiming under them, and void only as to creditors, who are thereby delayed, hindered, or defrauded. No creditor can he said to he delayed, hindered, or defrauded, by any conveyance, until some property, out of which he has a specific right to be satisfied, is withdrawn from his reach, by the fraudulent conveyance. Such specific right does not exist, until he has bound the property by judgment, and, in the case of personal property, by execution delivered to the Sheriff, and has shown that he is defrauded by the conveyance, in consequence of not being able to procure satisfaction of his debt, in a due course of law. Then, and then only, he acquires a specific right to be satisfied out of the property conveyed; and shews that he is a creditor, and is delayed, hindered, and defrauded, by the conveyance. When a party has thus brought himself within the terms of the statute, he is entitled to the assistance of a Court of Equity, to remove the impediment to his legal rights: and the Ken, frustrated by fraud, will be considered as still subsisting in equity.
A judgment and execution delivered to the Sheriff, against a fraudulent donor, hinds personal property in the hands of the fraudulent donee. The execution is against the goods and chattels of the defendant generally; and, the conveyance being void, the goods are still the goods of the *396 donor, and may be taken under the execution. But, a judgment and execution against the executor or administrator of the donor, cannot bind the goods in the hands of j-jle fraudulent donee; since the deed is good between the parties, and those claiming under them. The execution, in that case, is against the goods and chattels of the testa-tor or intestate, in the hands of the executor or administrator, to he administered; and such goods are not, even in contemplation of law, in, and never can come to, his hands to be administered.
Although the judgment against the administrator of CJiamberlayne, in this case, did not therefore bind the property in question; yet, it shewed that the plaintiff was a creditor; and the subsequent proceedings in this suit shew that he was hindered, delayed, and defrauded, by the conveyances in question; for, the property vjas thereby withdrawn from the satisfaction of his demand, and no other assets of the debtor remained for his satisfaction.
These proceedings establish those facts against the donees. A judgment against the donor, in his life-time, would have established the debt as against the donees, un» less impeached by them on the ground of fraud, or for any other just cause; insomuch that an execution might be thereupon levied upon the property; and if the donees attempted to impeach the judgment, they must, for that purpose, have resorted to a Court of Equity. We can see no reason why a judgment against the legal representative of the donor should not have precisely the same effect. Indeed, in all cases where the question is, whether a person be a debtor or not, a judgment against him or his legal representative seems to be prima facie evidence of the fact, liable to be controverted upon the ground of fraud, or upon any other just ground, by any one a stranger to the judgment; except, perhaps, in the case of the real and personal representatives of the same person; in which case, either the one or the other might have been sued, in the first instance. Thus, all creditors are entitled *397 to satisfaction out of the assets of a deceased debtor, according to their legal priorities. Each has, therefore, an interest in the question, whether the debts claimed by others be duo or not; yet, a judgment in favor of one, binds all others, upon the question, whether the debt be due or not; unless they can impeach it on the ground of fraud. So, in bankruptcy, a judgment against the bankrupt. is evidence of the debt against other creditors, until impeached. This rule seems to bo peculiarly applicable to the case of persons claiming under voluntary convoyancos. Saunders v. ——, Skinner, 586, cited in 13 Via. Abr. tit. Fraud, F. Pl. 18. The donees have attempted to impeach this judgment, but have failed in their proofs. The fact of the want of other assets (than those conveyed to the donees,) to pay the plaintiff’s demand, is established in this suit. It is not for the donees to alledgo that the assets in the hands of the administrator, ought to have been applied to the payment of this debt. They were applied to the payment of debts; and, as to the donees, that application was rightful, and not injurious. It was their right and duty to surcharge and falsify the accounts of the administrator, if they were wrong, which they have failed to do.
It was not necessary, as a pre-requisite to the maintaining of this suit, to have previously established the fact of a deficiency of assets, in another suit; or to have bound the property by an action against the donees, as executors dc son tort, proving in that cause that there were no other assets to satisfy the demand, and prosecuting the same to judgment and execution, as might have been done. 13 Vin. Abr. tit. Fraud, C. Pl. 5. For, all creditors have a specific right to be satisfied out of the property of their deceased debtor, in the hands of his executor or administrator, if there be a rightful executor or administrator; or, if not, in the hands of his executor de, son tort; or if, as in this case, there be a rightful executor or administrator, and also an executor or executors de son tort, out of the *398 debtor’s property in the hands of the latter, if there he n0£ sufficient assets in the hands of the former. This is in the nature of a lien; and the executor or administrator, ancj executor de son tort, are in the nature of trustees for the creditors. In general, when there is a rightful executor or administrator, there cannot be an executor de son tort; because, any person, having possession of the property of the deceased, is responsible therefor to the rightful executor or administrator, and ought not, therefore, to be. responsible to creditors also. Otherwise, he would be doubly chargeable. But, in the case of fraudulent conveyances, the donee in possession is an executor de son tort, although there be a rightful executor or administrator. For, as he cannot be made responsible therefor to the rightful executor or administrator, the reason of the general rule fails in that case; and if the donee was not, in such case, liable as executor de so?i tort, the creditor would be without remedy. Roberts on Fraud. Con. 593, and cases there cited; Pierce v. Turner, 5 Cranch; Edwards v. Harben, 2 Term Rep.; 11 Vin. Abr. 219, Pl. 9, and, notes; 13 do. tit. Fraud, C. Pl. 5.
The plaintiff, therefore, had a right, without first binding the property otherwise, and without otherwise shewing that he was defrauded, in consequence of there being • no other fund, to satisfy his demand, than the property in the hands of the donees, by another suit, to go originally into a Court of Equity against the donees as executors de son tort, for a discovery, account and satisfaction, out of the assets in their hands; and, in that suit, to establish his demand, if it had been liquidated, or was a matter of account, and not before established; and to shew that he could not get satisfaction otherwise, and so was hindered, delayed, and defrauded. And this he has virtually done, although he does not call them in terms executors in their own wrong. In this case, a preliminary suit at law against the rightful administrator, or against the donees, was necessary, as the claim sounded in damages; and the rightful *399 administrator was properly made a party, to account for the assets which had come to his hands. For, if he had had assets to pay the demand, the conveyances would not Iiave been void.
The deeds in question are clearly fraudulent and void as to creditors of the donor. All, except that to Evelyn Beverley, in 1793, were executed when the donor was indebted to a degree of embarrassment, and when the very debt, the satisfaction of which is now claimed, was due; and although he retained enough to satisfy all his debts, and lost a large portion of his personal estate afterwards, by a calamitous accident, he had no right to throw upon his creditors the hazard of such an accident, and to provide for his family at their expense. As to the deed of 1793, although it is probable that the donor was also largely indebted when he executed that deed, yet there is no sufficient evidence of that fact in this record. And, although the donor retained the possession of the property, yet, if the deed had been duly recorded, it might have been valid. But, being recorded on the proof of one witness only, that deed is also fraudulent and void, under that clause of the statute of frauds, beginning with the words, “and moreover.” Independent of this clause of the statute, a voluntary conveyance, made by a person not at all indebted at the time, and not in contemplation of future debts, and without any other badge of fraud, would probably be good, notwithstanding the donor retained the possession; for, such possession could be no evidence of an intent to defraud creditors, when none existed, or were in contemplation of the party. But, the said clause invalidates even such a conveyance, unless, in the case of personal property, the deed be recorded on the acknowledgment of the party, or proof of two witnesses, or unless the possession remain bona fide with the donee.
It is also insisted, that the donees ought to have been subjected to a rateable contribution, for the satisfaction of the demand of the appellee. At law, persons claiming *400 under voluntary, fraudulent, and void conveyances, cannot reqUire a creditor to proceed against them severally, for rateable proportions of the debt. He might proceed aga;nst them severally, after the death of the debtor, as executors de son tort, for the full value of the assets of the debtor in their hands; and the insolvency of one would not excuse any other; and so it should be in equity, if an attempt to equalize the burthen, produced any unreasonable delay or detriment to the creditor. Bui where, as in this case, the creditor has convened all the parties, none of whom are chargeable with actual fraud, and where all the materials for a just apportionment are already in the record, and that cán be made without any matei-ial delay or injury to the creditor; a Court, whose maxim is that equality is equity, should apportion the demand amongst the parties responsible thereto; the more especially as, if the burthen was unequally borne, and the suffering party could, in that event, claim contribution of the others, this would involve those parties in new litigations. . But, this ought to be done with a reservation of the right to the creditor, to resort for satisfaction to all the parties responsible to him, to the full extent of their liabilities respectively, in the event of his failing, from insolvency or any other cause, to procure satisfaction from any of the parties, of their due proportions of his demand.
The decree should be corrected in this particular, and the appellants should pay to the appellee his costs, he being the party substantially prevailing.